UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| MILTON ALFRED LEWIS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:09-cv-01691-LSC |
| | ] | |
| ESKRIDGE TRUCKING CO., INC., | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.   Introduction.

Pending is Defendant's motion for summary judgment, filed on October 28, 2010, by Eskridge Trucking Company, Inc. ("Eskridge"). (Doc. 23.) Plaintiff Lewis filed this suit alleging that his former employer, Eskridge, failed to pay him overtime as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.   Eskridge now moves for summary judgment on the overtime issue,[1] asserting that the FLSA exempts employees

---

[1]Eskridge also moves for summary judgment on Count Two of Lewis's complaint: a minimum wage violation. As Eskridge points out, Lewis fails to allege any particular facts in support of the count. (Doc. 1 at 3.) Rather, Lewis's complaint alleges that Eskridge paid him ten dollars an hour, a rate exceeding the minimum wage. (Doc. 1 at 2.) Lewis, in addition, fails to address the issue in his response. (Doc. 25.)  Eskridge is

like Lewis under the Motor Carrier Act ("MCA"), 49 U.S.C. § 31502, rendering the FLSA's overtime provisions inapplicable. The issues raised in Defendant's motion for summary judgment have been briefed by both parties and are now ready for decision. After considering the presented evidence and legal arguments, Defendant's motion for summary judgment is granted.

II.   Facts.[2]

Eskridge Trucking company holds a Department of Transportation ("DOT") license as an interstate motor carrier of freight. Interstate services are a significant part of its business. For one service contract, Eskridge transported wood shavings from a Weyerhaeuser sawmill ("sawmill") near Millport, Alabama. Because it processed logs into two-by-fours all day, the sawmill generated a lot of wood shavings. The sawmill collected all the shavings in a single steel bin on legs that would accommodate a trailer

---

thus entitled to summary judgement on Lewis's minimum wage claim.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

underneath it.

Eskridge unloaded this bin and delivered the wood shavings to various locations in Mississippi. To do this, Eskridge kept six trailers at the sawmill. An Eskridge employee would move one of the trailers under the bin. Someone would next pull a chain that dispensed the wood shavings into the trailer. The employee would then move the trailer up a few feet. The employee would repeat the process once or twice over the next two to four hours because the sawmill processed enough wood to fill the bin in about two hours and each trailer could hold two to four bin loads. (Doc. 25-1 at 9; Doc. 25-2 at 8.) After a trailer reached capacity, the Eskridge employee would hook the onsite tractor up to it, weigh it onsite, and unhook it, then retrieve a new one, and place the new trailer below the bin. Thirty to forty-five minutes elapsed between the final bin load and when the employee placed a new trailer below the bin. Periodically, Eskridge's open-road truck drivers would bring an empty tractor to the sawmill, hook up a full trailer, and tow it to Mississippi.

Eskridge hired Lewis on May 19, 2008, as the employee onsite at the sawmill. Lewis, the only Eskridge employee at the sawmill, worked without

an Eskridge supervisor. The sawmill expected Lewis to be available to empty the bin from 5:30 a.m. to 1:30 a.m.  Yet he did not work the entire time. "[He] kept up with [his] hours." (Doc. 25-2 at 22.)  And Eskridge paid Lewis "for the time that he turned in." (Doc. 25-1 at 11.)  Lewis had few responsibilities other than unloading the bins into the trailers: He occasionally emptied the wood chips into an Eskridge dump truck and took the shavings to an onsite boiler.  And so Lewis generally spent the period between bin unloadings at his home, "an attractive feature of the job for [him]."  (Doc. 25-2 at 12.)  Eskridge supplied him with a cell phone on which the sawmill could contact him when the bin reached capacity.  Lewis generally emptied the bin twice in the morning and two to three times during the evening.  In February 2009, Eskridge hired another employee to handle the morning loading.  Lewis left Eskridge in August 2009, and filed this case the same month.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute

is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

The FLSA requires overtime pay for worked hours exceeding forty a week. 29 U.S.C. § 207(a)(1). But this provision "shall not apply with respect to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [the Motor Carrier Act]." 29 U.S.C. § 213(b)(1). Importantly, "the Secretary of Transportation need not actually exercise his power to regulate under the [MCA]; an exemption . . . is created so long as the Secretary has the authority to regulate over a particular category of employees." *Spires v. Ben Hill Cnty.*, 980 F.2d 683, 686 (11th Cir. 1993). The Secretary has this power subject to two conditions: (1) A carrier "whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act" employs the employee; and (2) the employee "engage[s] in activities of a character

directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA]." *Mena v. McArthur Dairy, LLC*, 352 Fed. App'x 303, 305-06 (11th Cir. 2009) (quoting 29 C.F.R.§ 782.2).

Under the first condition, Eskridge contends that it is an interstate commercial motor carrier. (Doc. 23 at 6.) The MCA permits the Secretary of Transportation to "prescribe requirements for . . . qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." 49 U.S.C. § 31502(b)(1). Lewis does not dispute that Eskridge is an interstate motor carrier. (Doc. 25 at 1.)

Instead, Lewis argues that the second condition does not apply: he did not hold one of the MCA-enumerated jobs exempted from the FLSA. (Doc. 25 at 9.) Specifically, Lewis avers that he was not a "loader,"[3] under the

---

[3]In its reply brief, Eskridge asserts for the first time that Lewis is exempt "by virtue of performing the duties of . . . a mechanic." (Doc. 26 at 10.) Eskridge admits that it did not hire Lewis as a mechanic. (Doc. 25-1 at 15.) Lewis's mechanically-related duties are part of his loader duties. Regardless of how Eskridge characterizes his duties, the legal framework requires delving into the effects on safety. The Court will thus address all Lewis's duties under the safety analysis.

MCA.  (Doc. 25 at 9.)

Addressing "loader," the Federal Regulations set out various activities that affect the safety of a motor vehicle traveling in interstate commerce. 29 C.F.R. § 782.5.  A loader must "exercis[e] judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized."  29 C.F.R. § 782.5(a).  But "the placing of certain articles of freight on a motor carrier truck may form so trivial, casual, or occasional a part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of 'loading' which directly affects 'safety of operation.'"  29 C.F.R. § 782.5(c).

Lewis contends that he had little discretion in the layout and distribution of the wood shavings, rendering the MCA inapplicable and allowing him to assert FLSA overtime claims.  Eskridge points out that Lewis held the loader position with Eskridge Trucking (Doc. 25-1 at 5.), referred to himself as a loader (Doc. 25-2 at 7), worked without supervision, and

admitted he had discretion in loading the trailers. (Doc. 25-2 at 6.)

The FLSA exempts Lewis. He meets the loader exemption because he exercised discretion in building the load and because, more generally, his activities affected the safety of the trailers. 29 C.F.R. § 782.5(a); 29 C.F.R. § 782.2(a).

Lewis retained the discretion required for loader designation under the Federal Regulations. Instead of forming an "occasional [] part of [his] activities" loading constituted the majority of Lewis's work: he and his employer considered him a loader. 29 C.F.R. § 782.5(c); (Doc. 25-2 at 7.) Lewis admitted that he exercised his independent judgment, that he used his discretion, and that no "Eskridge supervisor [was ever] on site to check whether [he was] doing it correctly." (Doc. 25-2 at 11.)

Eskridge expected Lewis to exercise his discretion, which he did. During the process, Lewis would "make sure that the load was leveled out and wasn't half [on one side of the trailer]." (Doc. 25-1 at 6.) "[H]e had to make sure that that trailer was under there right square with it, see, so that . . . it would equally load the shavings from both sides so it would be level." (Doc. 25-1 at 9.) Eskridge also testified that wet wood shavings

would weigh more, a factor for which Lewis would have to account. (Doc. 25-1 at 16.) Dry shavings may have required Lewis to dump five or six bin loads a day; wet shavings may have required ten or eleven a day. (Doc. 25-2 at 20.) But as he says, "it depends on what day." (Doc. 25-2 at 20.)

Another variable existed: "Some of the trailers are 45-foot and some are 48-foot." (Doc. 25-1 at 9.) This allowed trailers, according to Eskridge, to hold from two to four bin loads; yet, Lewis testified that two to three bin loads usually loaded a trailer. (*Cf*. Doc. 25-1 at 9 *with* Doc. 25-2 at 8.) But, of course, Lewis made the decision, because his employer made him "responsible" for the loading. (Doc. 25-1 at 11.)

But more than exercising discretion in loading the trailers, Lewis's activities affected the safety of trailers bound for Mississippi. Unsupervised, Lewis poured around 44,000 pounds (Doc. 25-1 at 6) of wood shavings into a trailer. His employer testified "if you load [the trailer] too heavy to the right side, which is the low side of the road, it's going to be dangerous [] if you go into a curve and turn to the right or to the left . . . . It could tip over." (Doc. 25-1 at 16.)

In addition to loading them, Lewis scanned the trailers for mechanical

problems, including flat tires: "If I found anything wrong with the trailers, I let [Eskridge] know." (Doc. 25-2 at 10.) A flat tire that blows out on the interstate generates enough friction to combust upon contact with flammable material, like wood shavings. (Doc. 25-1 at 16.)

Lewis loaded, without supervision, around twenty-two tons of flammable shavings. Improperly distributed, this weight could tip over a turning trailer. Upon loading the material, Lewis's responsibilities did not end. He had to probe the trailer for bad tires or faulty brake lines, whose failure could, of course, cause collisions. In *Vaughn v. Watkins Motor Lines, Inc.*, the Sixth Circuit upheld the district court's holding that the FLSA exempted particular loaders covered under the MCA. 291 F.3d 900, 905 (6th Cir. 2002). In so holding, the appellate court stated that the plaintiffs had "some appreciable discretion" in their activities, "not diminished by virtue of the fact that the supervisors . . . checked the trailers before they were closed and on occasion told [plaintiffs] how to load the freight." 291 F.3d at 905. Lewis surmounts that bar.

Lewis, in sum, had discretion in loading. His loading and various other responsibilities implicated the safety of trailers in interstate transport. The

MCA thus covers him, and the FLSA exempts him.  FLSA overtime provisions do not pertain to him.  Summary judgment is thus appropriate on his FLSA claim.

V.   Conclusion.

For the reasons stated above, Defendant's motion for summary judgment on Plaintiff's claims is granted.  A separate order will be entered.

Done this 20th day of January 2011.

                              L. SCOTT COOGLER
                    UNITED STATES DISTRICT JUDGE

159890